JOHN DAWSON

*v.*

JANE DAWSON.

*Filed at Ottawa June 13, 1884.*

ALIMONY—*of its reasonableness.* After a decree of divorce in favor of a wife, giving her the custody of the two children of the marriage, (a son, aged fifteen years, and a daughter, aged thirteen years,) it was agreed that the husband should pay the wife $150 per month, which was more than one-half of his net income, and give her all his household furniture, worth from $3000 to $5000, and the court decreed accordingly. The wife agreed to this, with full knowledge of the husband's circumstances, and was in no respect deceived or misled, and it appeared that she brought to the husband no property, and that the burden of paying taxes and assessments, and rebuilding, repairing, renting, collecting rents, etc., was left upon him. Afterward, the wife filed her petition to be allowed a further sum for the support and education of the children, and the court required the husband to pay $25 per month additional alimony, and to pay the wife's solicitor $200, and the costs of the proceeding: *Held,* the sum first allowed was sufficient, and that the wife should pay her own attorney's fees, and the supplemental decree increasing the alimony and directing the husband to pay the attorney's fees was reversed, each party to pay the costs incurred by him or her.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Jane Dawson filed her bill in chancery, praying for a divorce from her husband, John Dawson, in the circuit court of Cook county, on the second day of December, 1881, alleging therein, among other things, her marriage with John Dawson, the birth of two children, the issue of such marriage, the ownership of certain property by John, and that he had been guilty of habitual drunkenness for more than two years last past. John Dawson answered the bill, denying the material allegations, but subsequently, by leave of the court, he withdrew his answer, and the bill was then taken *pro confesso* against him. At the April term, 1882, of the court, the cause

came on to be heard, and was heard on evidence, and the court thereupon decreed that the parties be divorced, that Jane have the custody of the two children, and that John pay her $150 per month alimony.

On the third day of November, 1882, an order of the circuit court of Cook county was made, allowing Jane Dawson to file a petition to increase the amount allowed for alimony, and to add thereto an amount for the education and support of the children. The petition was forthwith filed, and alleges that the amount of alimony decreed is inadequate for the support of the petitioner and the education and nurture of the children; that the defendant did not fully disclose all his property in the divorce suit,—setting forth what she believes to be the value of the property, and stating that defendant has threatened to, and that she fears he will, convey or incumber his property, etc. The defendant, John Dawson, answered the petition, denying that the amount awarded as alimony is insufficient for the support of the complainant and the education and nurture of the children, alleging that in addition to the amount awarded as alimony, complainant had enjoyed, free of charge, $5000 worth of furniture belonging to him.

On the 19th of December, 1882, the court decreed that the cause be referred to a master in chancery, to "take further testimony, and examine the testimony already taken, and to inquire and report as to the value of the defendant's estate, and the amount of his income therefrom, at the time of the filing of the petition, * * * and the situation and circumstances of the respective parties, and what would be a reasonable sum to be allowed to the petitioner for the support and maintenance of herself and children."

On the 7th of May, 1883, John Dawson filed his petition in the same court, reciting the proceedings in the divorce suit, and alleging that by the decree therein Jane Dawson was to have the care and custody of the children, and the

sum of $150 dollars per month as and for alimony; that "it was the intention of the court, and the understanding of counsel for all parties concerned, that the said sum of $150 should go to the support of the said Jane Dawson and the said children; that through inadvertence of counsel in drafting said decree, the order of court was not expressed in words unequivocal; that the said Jane Dawson now seeks to take advantage of the wording in said decree, by asking for an allowance to be decreed to said children;" and the petition concludes by praying that the decree be so reformed that the intent and meaning of the court may be expressed in words and terms unequivocal. Jane Dawson answered this petition, denying that the decree therein referred to, or the original draft thereof, is or was equivocal, or that any error or mistake was made therein in reference to the said alimony or the support of said children.

Afterwards, on the 14th day of May, 1883, the court ordered that the ·petition of John Dawson, so filed therein, stand as a bill to amend said decree, by reason of a mistake therein, with the right to Jane Dawson to file a cross-bill; and thereupon, on the 18th day of May, 1883, Jane Dawson filed her cross-bill in said cause, in which, among other things, she alleged that in the divorce case the court ordered that she have and retain the household furniture as her property; that by negligence in drafting the decree this order was omitted therein, and also that a mistake was made in describing the real estate of the defendant; that by want of a provision in said decree that the payment of alimony shall continue during her natural life if she should survive the defendant, her right to recover either alimony or dower after his decease would be involved in great doubt, and prays that said decree be corrected in the respects indicated, etc. The answer of John Dawson admits that a mistake was made in the decree in omitting to include therein the personal property, and in the description of the real estate.

On the 21st day of May, 1883, the master in chancery made his report in the case of the petition to increase alimony and for an allowance for the children, in which he finds that the complainant and defendant, for several years prior to the decree in said cause, lived with their two children and one servant at a house known as No. 761 West Monroe street, Chicago, furnished with furniture worth from $3000 to $5000, (which was paid for by defendant's money,) in a comfortable manner, defendant furnishing complainant with money for all wants she expressed; that since the rendition of said decree complainant has resided in the same house, using the same furniture, with her two children and the said servant; that she is paying a rent of $55 per month, and $15 per month for servant hire, and living in a manner less expensive than before the decree; that complainant has since the said decree enjoyed good health, and is now enjoying good health; that her son is aged fifteen years, and her daughter thirteen years; that the said children are in need of clothing, and for current expenses at school; that they attend the public schools of Chicago, the daughter taking music lessons; that complainant has been unable to pay her current expenses from the $150 per month allowed her; that since the rendition of the decree the gross income of the defendant has increased from what it was then stipulated to be, about thirty per cent; that since November 1, 1882, the gross income of defendant has been about $495 per month for all the year 1882; that the average net income of defendant was $333 per month, not deducting the interest on a loan of $10,000, made by defendant in November, 1881, at six per cent per annum, and that defendant, in July, 1881, was the owner of $10,000 in Cook county bonds; that defendant testifies he has no personal property excepting his clothing, and has had to borrow money for his personal expenses; that defendant must have spent in nineteen months more than $20,000; and concluding that defendant should be re-

quired to pay for the maintenance, etc., of said children,—to said son the sum of $15 per month, and for said daughter the sum of $20 per month.

John Dawson filed the following exceptions to this report:

"*First exception*—For that the said master has, in the said report, made an unjust allowance for the minor children of said Jane Dawson and John Dawson, inasmuch that the defendant should be required to pay for the maintenance, clothing, and personal expenses of said children,—for said son the sum of $15 per month, and for said daughter the sum of $20 per month,—when the said court had already made a fair and equitable allowance for said children, to be paid by the said defendant.

"*Second exception*—For that the said master has evidently made said report taking as a basis for the same the evidence produced before him as to the income of the said defendant after the third day of November, 1882, such testimony having been ruled out by said court, as will more fully appear from the said testimony marked entitled *Dawson* v. *Dawson*, testimony before the master, page 143, record.

"*Third exception*—For that the said master has incorrectly and erroneously stated in the said report the net income of the said defendant for the year 1882, and prior to the said third day of November, 1882, in figures far exceeding the actual sum of net income to the said defendant for the said year of 1882, and prior to the said third day of November, 1882, as will more fully appear from the said testimony.

"*Fourth exception*—For that the said master has based said report, and his conclusions upon what he thinks is true, from the evidence that the said defendant, in July, 1881, was the owner of $10,000 in Cook county bonds, and that the said defendant had, in November, 1881, $10,000, which he received on a loan, notwithstanding the said defendant's uncontradicted testimony that he, the said defendant, has no personal property except his clothing and household furni-

ture now used by the said petitioner, and had to borrow money for his personal expenses, as will more fully appear from said testimony."

The exceptions were overruled by the master, and renewed in the circuit court.

At the June term, 1883, of the circuit court, the following decree was entered in the several proceedings:

"This cause coming on to be heard, upon the petition of the said Jane Dawson, the answer of the defendant, and the replication of the petitioner thereto, and the petition of the said John Dawson taken as a bill of review, the answer thereto, and the replication of the said John Dawson to said answer; also upon the report of the master in chancery of this court, who makes report of what would be a reasonable allowance to be paid by said defendant to said petitioner, Jane Dawson, for the support and education of the two children of the said parties, and the objections of the defendant to the said master's report; and also the motion of said petitioner for an order on said defendant to pay her solicitor's fees, and the proof taken in said cause, and the testimony introduced and heard in open court; and the court having heretofore rendered a decree in said cause dissolving the marriage between the petitioner and the defendant, and by agreement of the parties directing the payment by the defendant to said petitioner of $150 per month as her alimony, it then appearing to the court, by stipulation filed in said cause, that the gross monthly income of said defendant was $385 per month, and that said agreed sum of $150 per month was a fair allowance for said petitioner; and the court having now heard the arguments of counsel for the respective parties, and being fully advised in the premises, finds:

"That since the entry of said decree the monthly income of the said defendant has increased $107 per month, by an increase in rents of his property, beginning November 1, 1882,

and that the children of the said parties are in need of means for clothing and for current expenses at school, with which the said petitioner is not able to furnish them from her alimony, and that the sum of $25 per month in addition to the amount now payable to her by said decree, will enable said petitioner to properly provide for said children; that it is not necessary to change or alter said original decree as to matter complained of in the defendant's petition, and the prayer of the defendant's petition to that end should be denied; that in all things except as to the amounts to be paid to said petitioner for said children, the report of the master herein should be confirmed; that the said petitioner is unable to pay the fees of Frank A. Johnson, her solicitor herein, and that $200 is a reasonable fee for the services of her said solicitor herein, and it is therefore ordered, adjudged and decreed, that in all things except the amount to be paid by said defendant to said petitioner for the said children, the report of the master herein be confirmed, and that the said decree heretofore entered herein as to the allowance of alimony and maintenance be and the same is altered as follows: That the said defendant, John Dawson, on the tenth day of each and every month hereafter, beginning June 10, 1883, instead of paying the said petitioner the sum of $150, shall pay to the said petitioner the sum of $175, as and for alimony and for support and proper education of said children, during the natural life of said petitioner, or until the further order of this court; and the payment of said sum of $175 per month is hereby made a lien and charge upon all the real estate of said defendant; and that the defendant pay to Frank A. Johnson, solicitor for said petitioner, the sum of $200 as solicitor's fees, within sixty days from the rendition of this decree, and that the defendant pay the costs of this proceeding, to be taxed by the clerk of this court, within sixty days from the rendition of this decree; and that in default of the payment of any of said sums in the manner and at the time herein

provided, execution issue therefor, and that the injunction issued in this cause be and the same is dissolved."

From this decree John Dawson appealed to the Appellate Court for the First District, and that court, at its October term, 1883, affirmed the decree of the circuit court, and this appeal is from that affirmance. The errors assigned bring before the court the questions discussed in the opinion.

Mr. M. R. FRESHWATERS, for the appellant.

Mr. FRANK A. JOHNSON, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

We think there was error in not sustaining John Dawson's second and third exceptions to the master's report. The decree directed the master "to inquire and report as to the value of the defendant's estate, and the amount of his income therefrom, at the time of the filing the petition." The petition was filed on the second day of November, 1882, but the report of the master is based on the income derived, or, rather, that he presumed would be derived, from the defendant's estate after that time.

Counsel for Jane Dawson only claims, as we understand his position, that the evidence shows a net income from John Dawson's estate for the year 1882,—*i. e.*, prior to the 1st of November, 1882,—of $330.56 per month, and out of this amount the decree for alimony gives her $150 per month,— only a small fraction less than one-half,—in addition to imposing all the costs and expenses of the litigation upon him. Adding to this all the household furniture, valued at from $3000 to $5000, and taking into consideration that none of the property from which the income is derived was obtained from Jane Dawson, it would be difficult to comprehend why, on that basis, the allowance should be regarded as unreasonably low.

The estimated income after November 1, 1882, is not only in direct opposition to the direction of the decree, but it is not sustained by the evidence, as we understand it, but is purely conjectural. The master's report, in this respect, is sought to be sustained by two modes of calculation,—one based on what is assumed as the fair result of the evidence as to the values of rent to be paid, which gives a monthly gross income of $496.87; and the other based on a stipulation filed by the parties at the time the original decree was rendered, whereby it was admitted by John Dawson that his gross income was $380 per month, and adding thereto $200 per month for the increased rental value of eight stores or stalls at the corner of Jackson and Clinton streets. Neither of these estimates takes into account the necessary and reasonable expenses of the property, and yet it is obviously impossible to make a just estimate of what a party is able to pay from an income without taking them into account. Taxes and assessments must be paid, buildings must be renewed or repaired from time to time, and existing liens, if any, must be renewed, or, at least, the interest kept down. To illustrate: From a gross income of $500 per month, costing $250 per month to produce it, it is evident there can be but a capacity of paying $250 per month.

But since the year commencing November 1, 1882, would not expire until November 1, 1883, it is impossible that the expenses and costs of producing that rent, as well as the fact of the actual collection of the whole amount of rent, can be certainly known before that time,—yet all the evidence taken in this cause was taken on December 12, 1882, January 18, 1883, and February 3, 6 and 10, 1883, respectively, the last more than eight months before the expiration of the year. Moreover, the tenants occupying the premises testify to an unwillingness to continue paying the increased rent, and since they are only tenants from month to month, they might at any time refuse to continue to do so, and after giving the

requisite notice, terminate their relation. There is evidence, also, that the property on the corner of Clinton and Jackson streets, from which the chief prospective increase in rents is to be derived, is in an unsafe condition, and that it will cost at least $2000, to repair the premises. In addition to this, the same property is incumbered by a trust deed to secure the payment of $10,000, and accruing interest at six per cent per annum, executed in 1881, and before Jane Dawson filed her bill for divorce. The evidence seems to show that this indebtedness was incurred in good faith. In the chief part of the property from which the income is derived, Dawson is in partnership with one Miller, and Miller testifies that Dawson's net income for the year 1882, counting up to December 1, 1882, was only $299.60 per month, and that for 1881 it was $236.72 per month. Dawson's estimate is still less for the year 1882,—$249.

The master seems, in his report, to lay some stress upon an admission of John Dawson that he had $10,000 of Cook county bonds, testified to by Jane Dawson and her daughter. We think this can cut no figure in the present proceeding. John Dawson denies, on oath, the ownership of any personal property other than his wearing apparel, and Jane Dawson made the allegation of the same admission, coupled with the charge that he had subsequently wasted and squandered the whole $10,000, in her bill for divorce, which was sworn to by her, and Dawson did not then claim to have such bonds. If they were then spent, they can not now augment the amount of his estate, so as to form the basis of an additional allowance.

There is no pretense that John Dawson has acquired any additional property yielding an income since the decree of divorce was rendered, and the charge in the petition that he "did not fully disclose all his property in the divorce suit," is wholly unsustained by the evidence. Nor is there any proof that he has become more reckless in the management

of his property since the rendering of the decree of divorce. The amount of alimony seems to have been agreed to, at the time, with full knowledge on the part of Jane Dawson of every fact material to a comprehension of her rights. She fails to show that she was deceived or misled in any respect. The amount decreed her was something more than half her husband's net income, and on a fair consideration of the evidence it still bears substantially that relation to his income. He, meanwhile, has the burden of paying all taxes and assessments, rebuilding, repairing, renting, collecting, etc. We think she should be satisfied. The effect of the decree in first giving her the care, custody, etc., of the two children, and then giving her $150 per month for alimony, was, that that amount included all to which she was entitled from her husband's estate. She sought the care, custody, etc., of her children, and the court gave them to her, and then gave her the $150 per month as a support. By asking and assuming the care and custody she assumed the duty and obligation of support. It would be unprecedented, especially where, as here, the wife brings no estate to the husband, to give her, on divorce, more than one-half of his net income, and then charge him with an additional amount to be paid her for the nurture and education of her children.

We think there was no sufficient reason for the filing of this petition. So far as there was a mistake in the decree there was no disposition to resist its correction. It might have been done without expense,—at least it was incumbent on the petitioner to have first made the effort to have had it so done. And there was no material change in the condition of the parties after the decree for divorce was rendered. Under all the circumstances, we think Jane Dawson should pay her own attorney's fees and costs in this proceeding. The decree below increasing the amount of alimony to be paid by John Dawson, and directing that he pay $200 to

Frank Johnson, her solicitor, is reversed.   The costs incurred herein by John Dawson will be taxed against him, and those incurred by Jane Dawson will be taxed against her.

*Decree reversed.*